Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Telephone: (516) 268-7080
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

7:20-cv-09009

| | |
|---|---|
| Jennifer Collishaw, individually and on behalf of all others similarly situated,<br><br>                                        Plaintiff,<br><br>                    - against -<br><br>Cooperative Regions of Organic Producer Pools,<br><br>                                        Defendant | Class Action Complaint |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Cooperative Regions of Organic Producer Pools  ("defendant") manufactures, distributes, markets, labels and sells vanilla protein shake under its Organic Valley brand ("Product").

2.    The Product is available to consumers from retail and online stores of third-parties and is sold in sizes including but not limited to cartons of 11 OZ (330 mL).

3.    The relevant front label representations include Organic Valley," "High Protein Milk Shake," "50% Less Sugar Than Before," "Fuel," "20g Protein Per Serving," "USDA Organic," "Vanilla" and a vignette of the flower of the vanilla plant atop cured vanilla beans.



4.    Relevant side panel statements include "No Compromises in Ingredients or Taste" and "A High Quality Protein Shake."



5.     The representations are misleading because the Product contains non-vanilla, artificial flavors, not disclosed to consumers and has less vanilla than consumers expect.

6.     The Product's front label representation of "Vanilla," and vignette of the vanilla flower and cured vanilla beans "leads consumers to believe that it is flavored with vanilla extract, or another vanilla flavoring derived solely from vanilla beans, as defined in the federal standard of identity when in fact it is not."[1]

7.     Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[2]

8.     According to one flavor supplier, today's consumers "want real vanilla, not imitation

---

[1] Hallagan and Drake at 54; *See also* 21 U.S.C. §343(g) (requiring ingredients to be listed with "the name of the food specified in the definition and standard"); 21 C.F.R. § 101.4(a)(1) (requiring ingredients "be listed by common or usual name").
[2] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

[vanilla] flavoring."

9. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[3]

10. Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[4]

11. Label Insight determined that 76% of consumers avoid products with artificial flavors.[5]

12. Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[6]

13. Flavoring ingredients, especially for products labeled as vanilla, are typically the most expensive ingredient in a food, and vanilla has reached record high prices in recent years.[7]

14. Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[8]

15. Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals,

---

[3] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[5] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[6] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[7] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.
[8] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[9]

16.    According to flavor supplier FONA, vanilla is known to have "29 distinct flavor characteristics…grouped into 10 main categories: smoky, spicy, botanical, sulfury, sweet, creamy, medicinal, cooked, fatty, and floral."[10]

17.    Creaminess is a key flavor note in vanilla, according to Symrise, one of the largest producers of vanilla flavors in the world:

> Sweet, creamy, smooth and comforting? Rich, rummy, indulgent and buttery? The characteristics we associate with vanilla[11]

18.    The main type of vanilla – bourbon vanilla from Madagascar – provides a "creamy flavor to the products they're used in, and have strong vanillin overtones."[12]

19.    Vanilla "is usually described as creamy," which "denotes a rich feeling, infused with silky, sensuous and lightly or more heavily sweet notes."[13]

20.    Nielsen-Massey, one of the oldest importers of vanilla, describes it as "Full, sweet, creamy and mellow with velvety after-tones."[14]

21.    An example of the compounds which provide vanilla's flavor are shown in table below, identified through gas chromatography-mass spectrometry ("GC-MS") of a sample of Simply Organic Madagascar Vanilla Extract.

---

[9] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.
[10] Melody M. Bomgardner, The Problem with Vanilla, Chemical & Engineering News, September 12, 2016, Vol. 94 Issue 36
[11] Symrise, Vanilla – Creativity and Innovation.
[12] Id.
[13] Perfume Shrine, Definition: Creamy, Milky, Lactonic, Butyric in Fragrances, October 11, 2011.
[14] Nielsen-Massey, Which Vanilla?

Table 2

Sheehan & Associates, P.C., Project #7643-2
Simply Organic Madagascar Pure Vanilla Extract
Production Code: 9274
Concentrated Ether Extract (Water-Soluble Components Washed Out) by GC-MS

Data File = TSQA4027

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

22.    These compounds can be detected and extracted because they have defined chemical structures.

23.    While vanillin is the most abundant compound (MS Scan # 759, 77.4301 Peak Area %), numerous other compounds contribute to vanilla's taste in small amounts.

24.    Methyl cinnamate (MS Scan # 751) and p-cresol (MS Scan # 415)  provide cinnamon and creamy flavor notes to vanilla.

6

25.    Vanillin, "[T]he most abundant flavor and aroma chemical present in cured vanilla beans…imparts a very sweet, creamy character and enhances the flavor strength of vanilla."[15]

26.    In early 2018, in response to rampant misleading labeling of vanilla products, attorneys for the flavor industry urged their peers to truthfully label vanilla foods so that consumers are not misled. Exhibit "A," John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018 ("Hallagan & Drake") ("There are many current examples of food products that are labeled as 'vanilla' that are clearly mislabeled and therefore in violation of FDA regulations.").

27.    The authors explain that relevant regulations "require that food products be labeled accurately so that consumers can determine whether the product is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans.[16]

28.    The authors noted "Adulteration of vanilla flavorings and foods containing them has long been a problem in the U.S. and there continue to be modern examples."

29.    The harms caused by misleading vanilla labeling include economic deception and use of toxic ingredients:

> While the concern at the time was for the "economic" adulteration of vanilla extract with an artificial and less valuable substance—synthetic vanillin—there was also some concern over the use of other adulterants such as coumarin that were thought to pose a possible safety concern. [17]

30.    To prevent consumer deception in the labeling of significant food products, the

---

[15] Arvind Randive, Chemistry and Biochemistry of Vanilla Flavor, Perfumer & Flavorist, Vol. 31, April 2006.
[16] Hallagan and Drake.
[17] John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

government established "food standards allow[ing] consumers to trust that a standardized food is what it purports to be because they establish[ed] explicit specifications for the standardized food."[18]

31.     Requirements for vanilla products were "established by the FDA in the 1960s over growing concern of adulteration of vanilla extract with less valuable substances," which alleviated "potential consumer fraud by establishing specific requirements for vanilla extract and other standardized vanilla products."[19]

32.     The vanilla standards are:

[A] series of individual standards that describe the common or usual name and recipes for eight flavorings: vanilla extract, concentrated vanilla extract, vanilla flavoring, concentrated vanilla flavoring, vanilla powder, vanilla-vanillin extract, vanilla-vanillin flavoring, and vanilla-vanillin powder.

These eight individual standards, at 21 CFR 169.175 – 169.182, are supported by specific requirements for the vanilla beans that may be used to produce vanilla extract and other vanilla products.[20]

33.     Three of these standards "combine vanilla extract with the primary chemically defined flavoring substance in vanilla beans, vanillin."[21]

34.     According to Hallagan and Drake, "Severe price and supply dislocations have historically coincided with changes in practices related to the composition and labeling of vanilla flavorings."[22]

35.     Where vanilla prices are high, "synthetic vanillin-based flavorings may be used to replace vanilla extract, or to adulterate vanilla extract in violation of the federal standard of identity."[23]

---

[18] *Id*.
[19] *Id*.
[20] *Id*.
[21] *Id*.
[22] "These disruptions cause "migration for economic reasons away from vanilla flavorings derived from vanilla beans that comply with the federal standard of identity," "Severe price and supply dislocations have historically coincided with changes in practices related to the composition and labeling of vanilla flavorings."
[23] *Id*.

36. Moreover, "Recent increased emphasis on consumers' desires for foods containing 'natural' food ingredients has resulted in the exploration of vanilla flavoring alternatives that are not derived from vanilla beans."

37. That Hallagan and Drake felt they needed to publicly identify the misleading labeling of vanilla products to their peers in the flavor and food industry is indicative that many are unaware, misunderstand or ignore vanilla labeling requirements.

38. Part of the reason for misleading labeling of vanilla products is because:

The regulatory environment related to flavors can be confusing, especially when the federal standards for vanilla flavorings and ice cream are read with the labeling regulations for flavors and foods containing added flavors that are not subject to federal standards of identity.

The U.S. regulations governing the labeling of flavorings and foods containing flavorings are among the most complicated and confusing regulations administered by FDA.[24]

39. To correctly label foods with a characterizing flavor of vanilla, Hallagan and Drake stress two key points:

1. "The federal standards of identity for vanilla flavorings at 21 CFR Section 169 [and ice cream at 21 CFR Section 135,] and their labeling requirements, take precedence over the general flavor and food labeling regulations at 21 CFR Section 101.22;" and

2. "The federal standard of identity for vanilla flavorings at 21 CFR Section 169 applies to both the flavorings sold directly to consumers and to food manufacturers."

40. The confusion in labeling vanilla products is because the regulations are not complete

---

[24] *Id.*

on their own but require incorporating external documents of limited availability. Hallagan and

Drake ("A variety of resources are available to flavor and food manufacturers and consumers that

facilitate an understanding of the proper labeling of vanilla flavorings and vanilla-flavored

foods.").[25]

41.    These resources include:

[A] formal advisory opinion issued by FDA and a variety of regulatory
correspondence issued by FDA in response to inquiries from other federal agencies,
industry, and the public.[26]

42.    The regulatory correspondence clarifies the relationship between the general flavor

regulations and vanilla regulations:

It is important to emphasize that these [at 21 CFR Sections 101.22(i)(1), (2) and
(3)] regulations apply only to foods that are not subject to a federal standard of
identity.

…

These regulations, found at 21 CFR Section 101.22, apply to all foods except for
those subject to a federal standard of identity and *this has often resulted in some
confusion with the standards governing vanilla flavorings and ice cream that have
their own requirements for proper labeling as required in FFDCA Section 403.*

Hallagan and Drake (emphasis added).

43.    New York has adopted all federal regulations for food labeling through its

Agriculture and Markets Law ("AGM") and accompanying regulations, which means the

requirements explained by Hallagan and Drake apply to labeling of vanilla products in New York.

*See* Title 1, Official Compilation of Codes, Rules and Regulations of the State of New York

---

[25] To provide an anecdote about the difficulty of obtaining the regulatory documents cited by Hallagan, this attorney
requested that Mr. Hallagan share the sources he cited in his article. In fact, the article concludes with inviting readers
to contact him so he could provide those documents. However, upon numerous requests, Hallagan refused to provide
me those documents claiming they were work-product, obtained during his work for the flavor industry. I ultimately
obtained the articles from another source. The FDA cannot locate the documents in their records as they may have
been destroyed inadvertently.
[26] *Id*.

("NYCRR").

44.    Based on the vignette of the vanilla bean and flower, the term "Vanilla" and the absence of any qualifying terms, consumers expect the Product's vanilla taste to be only from vanilla beans. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

45.    However, the ingredient list indicates "Organic Flavor" in addition to the exclusively vanilla ingredient of "Organic Fair Trade Vanilla Flavor."



**INGREDIENTS:** ORGANIC FILTERED GRADE A SKIM MILK, ORGANIC GRADE A CREAM, ORGANIC FAIR TRADE VANILLA FLAVOR, ORGANIC FLAVOR, SALT, LACTASE ENZYME, GELLAN GUM, ORGANIC STEVIA, VITAMIN D3.

46.    The representations of the Product as "Vanilla" is misleading because the "Organic Flavor" provides much of the Product's vanilla taste, yet this is not disclosed to consumers.

47.    GC-MS analysis of the flavor compounds revealed the Product contains "an abnormal excess of vanillin (MS Scan # 1024, 75.439 PPM) relative to the profile of minor components in a vanilla preparation," indicating vanillin from non-vanilla sources. *See* Sinha at 319-20.

48.    Vanillin, the key flavor molecule in vanilla, is known for having a "pleasant, smooth,

11

creamy-sweet aroma, that is best described by the seemingly redundant term *vanilla*."[27]

49.    Many important flavoring compounds in vanilla are present at below 1 PPM, and were not detected.

50.    The reason certain compounds were not detected was due in part to their presence below the detection threshold of one one-thousandth PPM.

51.    This means the Product contains a smaller amount of vanilla than consumers expect, based upon the unqualified front label of "Vanilla."

52.    For example, the ratio of vanillin to guaiacol (MS Scan # 687, 0.1810 PPM) in the Product is 416, compared to 211 (vanillin, MS Scan # 759, 77.4301 divided by guaiacol, MS Scan # 443, 0.36660) in a sample of Simply Organic Madagascar Pure Vanilla Extract.

53.    Guaiacol is a compound that occurs through the breakdown of vanillin from vanilla beans.

54.    The cause of the disparity in the ratios of vanillin to guaiacol is because the Product contains added vanillin, since guaiacol is only formed where vanillin is from vanilla beans.

55.    The ratio of vanillin to fufural[28] (MS Scan # 382, 0.0080 PPM) in the Product is 9429, compared to 1834 (vanillin, MS Scan # 759, 77.4301 divided by fufural, MS Scan # 115, 0.0422) in a sample of Simply Organic Madagascar Pure Vanilla Extract.

56.    Fufural is an aromatic constituent of vanilla, seldom used independently due to its high cost.

57.    The high ratio of vanillin to fufural in the Product is similarly explained by this compound being present in vanillin as part of vanilla extract, but not in vanillin from non-vanilla sources.

---

[27] George S. Clark, "A Profile: An Aroma Chemical," Perfumer & flavorist 16.1 (1991): 27-30 (emphasis in original).
[28] Sometimes referred to as "furfural."

58.     The Product appears to contains added vanillin, based on typical usage of vanilla at not greater than one percent of the total weight of ingredients.

59.     The absolute amount of vanillin in such a percentage would be approximately 0.1% or 10 PPM.[29]

60.     However, the vanillin is present at 75.439 PPM, almost eight times greater than if a standard amount of vanilla was used.

61.     The logical and plausible conclusion is that the Product contains vanillin from non-vanilla sources.

62.     The Product also contains maltol (MS Scan # 727), an artificial flavor. *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").[30]

63.     Though maltol is sometimes detected in vanilla at levels between 0.004 and 0.01 PPM, its presence in the Product at 13.346 PPM means it was added to the Product as a component of the "Organic Flavor."

64.     Maltol "can improve overall flavor, potentiate sweetness, increase the sensation of creaminess" and has "a mild flavor and sweet caramel-like odor."[31]

65.     Maltol "can help to smooth authentic style vanilla bean flavors" at modest levels.[32]

66.     The Product's "Organic Flavor" therefore consists of compounds which enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" of vanilla by providing, among other things, creamy, sweet and vanilla-like notes.[33]

67.     The relation of the "Organic Flavor" to the  "Organic Vanilla Flavor" appears to

---

[29] Arvind S. Ranadive, Quality control of vanilla beans and extracts (pp. 141-161) in Handbook of Vanilla Science and Technology, Havkin-Frenkel, Daphna, and Faith C. Belanger, eds., Hoboken, NJ, Blackwell Publishing, 2011.
[30] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").
[31] Lisa Kobs, The Sweet Taste of Success – Part Two, Food Ingredients Online, 1998; Maltol, UL Prospector, Bryan W Nash & Sons Ltd.
[32] John Wright, Flavor Bites: Maltol, Perfumer & Flavorist, June 2020.
[33] Vanilla, Taste Foundations, Virginia Dare Company.

trigger the requirement that the front label state "With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) (use of some flavor from the named characterizing food ingredient, supplemented by flavor from natural sources other than the named flavor requires a food to be labeled "With Other Natural Flavor" (WONF)).[34]

68.    However, Hallagan and Drake emphasize that vanilla is the one exception to the "WONF" requirement:

> The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.
>
> Labelling Vanilla.

69.    Though Hallagan and Drake describe a "combination" flavor which contains vanilla and non-vanilla, the analysis is the same where two separate flavors are added to a product.

70.    What matters to consumers is how a Product tastes – like vanilla – and what the front label tells them, i.e., the flavor is only from vanilla.

71.    The Product's use of flavor ingredients with added vanillin – naturally-produced or not – without disclosing this fact to consumers is deceptive and misleading:

> [V]anillin is characterizing for vanilla and [that] the addition of vanillin, whether derived from lignin or from other sources, must be clearly declared as in one of the three standardized vanilla flavorings or else the flavoring (most likely to be vanilla extract) is adulterated as would be any food containing it. [35]

72.    These "standardized vanilla flavorings" include vanilla-vanillin extract, which is a combination of vanilla and non-vanilla vanillin. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin

---

[34] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

[35] Hallagan and Drake.

extract"); 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring").

73.    The addition of non-vanilla flavor including vanillin and maltol, to enhance the taste of vanilla, requires these flavors be designated as artificial flavors and reflected on the ingredient list and front label.

74.    The Product's ingredient list is misleading because even assuming the "Organic Flavor" is from natural source material, it fails to disclose the presence of vanillin, which must be disclosed as an artificial flavor when paired with vanilla. *See* 21 C.F.R. § 169.181(b) ("Vanilla-vanillin flavoring") (requiring ingredient list to state "'contains vanillin, an artificial flavor (or flavoring).'"); *see also* Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized product and should therefore be labeled artificial or imitation."); Labeling Vanilla.

75.    Defendant's Product, "containing vanillin derived from a non vanilla bean source needs to be labeled as artificially flavored [because] the food is characterized/labeled as vanilla flavored." Exhibit "B," FDA, Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016.

76.    The front label is misleading to consumers because it does not state "artificial flavor," based on the presence of vanillin and maltol as part of the "Organic Flavor."

77.    By omitting "artificial flavor" or "artificially flavored" from the front label, consumers are not told that the Product's taste is not provided exclusively, or even predominantly, by vanilla beans, but by vanillin and maltol.

78.    Reasonable consumers and Plaintiff cannot follow up or learn the truth that the Product contains non-vanilla artificial flavors, including artificial vanillin, and less vanilla than the

front label suggests, from reading the Product's ingredient list because defendant labels its other flavor ingredient as "Organic Flavor" and fails to provide clarification elsewhere on the Product.

79.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiffs and consumers.

80.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiffs.

81.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

82.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

83.    As a result of the false and misleading labeling, the Product is an sold at a premium price, approximately no less than $3.79 for cartons of 11 OZ (330 mL), excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

84.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

85.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

86.    Plaintiff Jennifer Collishaw is a citizen of New York.

87.    Defendant Cooperative Regions of Organic Producer Pools, is a Wisconsin corporation with a principal place of business in La Farge, Vernon County, Wisconsin and is a

citizen of Wisconsin.

88.  "Minimal diversity" exists because plaintiff Jennifer Collishaw and defendant are citizens of different states.

89.  Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs.

90.  Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of Plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

91.  This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

92.  Plaintiff Jennifer Collishaw is a citizen of Sloatsburg, Rockland County, New York.

93.  Defendant Cooperative Regions of Organic Producer Pools is a Wisconsin corporation with a principal place of business in La Farge, Wisconsin, Vernon County.

94.  Defendant sells a variety of dairy products across all fifty states at locations including grocery stores, convenience stores, and big box retailers.

95.  During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations the Product did not contain artificial flavors and its flavor was only from vanilla.

96.  Plaintiff Jennifer Collishaw purchased the Product on one or more occasions, including during the latter months of 2019, at locations which include Walmart, 288 Larkin Dr, Monroe, NY 10950.

97.  Plaintiff bought the Product at or exceeding the above-referenced prices because she liked the product for its intended use and consumption, expected its vanilla flavor to come only

from vanilla because that is what the label said, and did not expect artificial non-vanilla flavor, because the front label did not disclose this nor was it clarified by the ingredient list.

98.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

99.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

100.    The Product was worth less than what Plaintiff paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

101.    Plaintiff lost money because of Defendant's unlawful behavior.

102.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components – either all the flavoring comes from vanilla or the front label discloses the non-vanilla artificial flavors.

<u>Class Allegations</u>

103.    The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

104.    Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

105.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

106.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

107.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

108.    No individual inquiry is necessary since the focus is only on defendant's practices

and the class is definable and ascertainable.

109.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

110.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

111.  Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

112.  Plaintiff incorporates by reference all preceding paragraphs.

113.  Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

114.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

115.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

116.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

117.  The ingredient list designation of "organic flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors and artificial flavors.

118.  The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiff.

119.  Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

120.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

121.  Plaintiff incorporates by reference all preceding paragraphs.

122.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

123.  The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

124.  The ingredient list designation of "organic flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors and artificial flavors.

125.  The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

126.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

127.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

128.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

129.  Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

130.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

131.   Plaintiff incorporates by reference all preceding paragraphs.

132.   The Product were manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

133.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a product's characterizing flavor is labeled "vanilla" without more.

134.   The ingredient list designation of "organic flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors and artificial flavors.

135.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

136.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

137.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

138.   Plaintiff provided or will provide notice to defendant, its agents, representatives,

retailers and their employees.

139.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

140.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

141.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

142.   Plaintiff incorporates by reference all preceding paragraphs.

143.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product and consumers do not expect non-vanilla, flavors where a products' characterizing flavor is labeled "vanilla" without more.

144.   The ingredient list designation of "organic flavor" fails to tell consumers and plaintiffs that the Product contains non-vanilla flavors and artificial flavors.

145.   The front label omits qualifying terms required to modify a characterizing flavor's representation when such flavor is not provided exclusively by the characterizing food ingredient, in violation of regulations requiring disclosure of these facts to Plaintiffs.

146.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

147.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

148.   Plaintiff incorporates by reference all preceding paragraphs.

149.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   October 27, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409

Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-09009
United States District Court
Southern District of New York

Jennifer Collishaw, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Cooperative Regions of Organic Producer Pools,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  October 27, 2020

/s/ Spencer Sheehan
Spencer Sheehan