UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JENNIFER COLLISHAW, individually and on
behalf of all others similarly situated,

                Plaintiff,

        -against-

COOPERATIVE REGIONS OF ORGANIC
PRODUCER POOLS,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**

20-CV-09009 (PMH)

LAURI McCAULEY, individually and on
behalf of all others similarly situated,

                Plaintiff,

        -against-

COOPERATIVE REGIONS OF ORGANIC
PRODUCER POOLS,

                Defendant.

21-CV-01548 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jennifer Collishaw ("Collishaw") and Lauri McCauley ("McCauley," and together, "Plaintiffs") separately bring actions against Cooperative Regions of Organic Producer Pools ("Defendant") in Case No. 20-CV-09009 (the "Collishaw Action") and Case No. 21-CV-01548 (the "McCauley Action").[1] Plaintiffs bring the same five claims for relief in each action: (i) violation of N.Y. Gen. Bus. Law ("NYGBL") §§ 349, 350; (ii) breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et*

---

[1] Defendant having sought leave to move to dismiss each action, Plaintiffs having been represented by the same counsel, and "[d]ue to common issues of law and facts, and to avoid unnecessary cost and delay," the Court consolidated the actions for motion to dismiss purposes under Federal Rule of Civil Procedure 42(a)(3). (Collishaw Action, June 17, 2021 Min. Entry; McCauley Action, June 17, 2021 Min. Entry).

*seq.*; (iii) negligent misrepresentation; (iv) fraud; and (v) unjust enrichment. (Collishaw Action, Doc. 21, "Collishaw FAC" ¶¶ 115-137; McCauley Action, Doc. 15, "McCauley FAC" ¶¶ 90-110). Plaintiffs, likewise, seek in each action monetary damages, costs and expenses (including attorney's fees), and certification of putative classes.[2] (Collishaw FAC at 20; McCauley FAC at 19).

Defendant moved on September 9, 2021, in accordance with the briefing schedule set by the Court, to dismiss both actions. (Collishaw Action, Doc. 31; McCauley Action, Doc. 25). Defendant filed a consolidated memorandum of law and a consolidated declaration in support of its motion (Collishaw Action, Doc. 32 & McCauley Action, Doc. 26, "Def. Br."; Collishaw Action Doc. 33 & McCauley Action, Doc. 27), Plaintiffs filed a consolidated memorandum of law in opposition (Collishaw Action, Doc. 38 & McCauley Action, Doc. 32, "Opp. Br."), and the motion was fully submitted on October 7, 2021, upon the filing of Defendant's consolidated reply brief in further support of its motion (Collishaw Action, Doc.37 & McCauley Action, Doc. 32, "Reply").

For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

Defendant, a leading organic dairy producer, markets, distributes, and sells a variety of organic dairy products. (Collishaw FAC ¶ 16). Defendant's products at issue herein include protein shakes and coffee creamers, each of which it markets under the brand name "Organic Valley." (*Id.* ¶ 1). Collishaw's FAC alleges claims based on the Organic Valley "Fuel" protein shake ("Shake") and McCauley's FAC alleges claims based on the Organic Valley "French Vanilla" coffee creamer ("Creamer," and with the Shake, "Products"). (*See generally* Collishaw FAC; McCauley FAC).

---

[2] McCauley's putative class consists of purchasers in New York, Rhode Island, Connecticut, and Maryland. (McCauley FAC ¶ 81). Collishaw's putative class consists of only New York purchasers. (Collishaw FAC ¶ 106). Both Plaintiffs initially sought injunctive relief but later withdrew those claims. (Collishaw Action, Doc. 28; McCauley Action, Doc. 22).

I.    <u>The Shake</u>

The Shake is a vanilla-flavored product, which is marketed as a "High Protein Milk Shake." The Shake is sold to consumers in 11-fluid ounce containers and the front label displays the words "Organic Valley," "FUEL," "20g Protein per Serving," "50% Less Sugar Than Before," "High Protein Milk Shake," "No Artificial Growth Hormones," "Vanilla," and "USDA Organic," alongside an image of what appears to be a vanilla flower and beans. (*Id.* ¶ 26). Pictures included in the Collishaw FAC of the Shake's front and side labels are reproduced immediately below:



(*Id.*).

The Shake's label, according to Collishaw, is allegedly marketed as "being flavored with, and by vanilla, from extracts of vanilla beans, shown through the statement, 'Vanilla' and picture of two vanilla beans and a large vanilla flower." (*Id.* ¶ 26). Collishaw alleges that because of these representations, "coupled with a general awareness that a label will disclose artificial vanilla, consumers have no reason to doubt the [Shake] contains a non-negligible amount of extracts from vanilla beans." (*Id.* ¶ 29). The Shake's ingredient list identifies "Organic Filtered Grade A Skim

3

Milk," "Organic Grade A Cream," "Organic Fair Trade Vanilla Flavor," "Organic Flavor," "Salt,"
"Lactase Enzyme," "Gellan Gum," "Organic Stevia," and "Vitamin D3." (*Id.*). Collishaw alleges
that, "[s]ince the [Shake] contains high-quality dairy ingredients such as 'Grade A' milk and
cream, consumers will expect a non-negligible amount of extract from the vanilla bean," and the
Shake "has a *de minimis* amount of the ingredient picture on the front of the label—extracts from
vanilla beans—but has a high level of synthetic flavoring." (*Id.* ¶¶ 33, 75 (italics added)).

II.     The Creamer

The Creamer is another vanilla-flavored product, which is marketed as "French Vanilla
Half & Half" coffee creamer. The front label of the Creamer displays the words "French Vanilla,"
"Organic Valley," "Half & Half," "Ultra Pasteurized + Grade A," "made with pasture-raised
Organic Cream," "USDA Organic," and "Organic is always non GMO," and contains, *inter alia*,
an image of what appears to be a vanilla flower and beans. (McCauley FAC ¶ 25). A picture
included in the McCauley FAC of the Creamer's front label is reproduced immediately below:



(*Id.* ¶ 24). The Creamer's label, according to McCauley, is misleading because "representations [on the label]—and a general expectation that a food or beverage will truthfully disclose whether it is 'Artificially Flavored'—assures consumers that the French Vanilla Creamer has a non-negligible amount of extracts from vanilla beans." (*Id.* ¶ 29). McCauley alleges that consumers are misled "because the front label fails to disclose the [Creamer's] taste is closer to (artificial) coconut than vanilla or at best, equally like coconut." (*Id.* ¶ 32). The Creamer's ingredient list identifies "Organic Grade A Milk and Cream," "Organic Fair Trade Unrefined Cane Sugar," "Organic Fair Trade Vanilla Flavor," and "Organic Coconut Flavor." (*Id.* ¶ 31). McCauley alleges that the ingredient list "is required to state, 'Artificial Flavor' instead of 'Organic Coconut Flavor." (*Id.* ¶ 57).

III.    Plaintiffs' Purchases

Collishaw purchased the Shake "on one or more occasions" at locations including a Walmart in Monroe, New York. (Collishaw FAC ¶ 101). McCauley purchased the Creamer "on at least one occasion" at a Stop & Shop in Peekskill, New York. (McCauley FAC ¶ 75). Plaintiffs allege that the Products are sold at a "premium price" because of the false and misleading representations. (*Id.* ¶ 65; Collishaw FAC ¶ 90). Plaintiffs allege also that other, similar products "truthfully tell consumers their vanilla taste is not from extracts from [real] but artificial vanilla, because they say, 'Artificially Flavored.'" (Collishaw FAC ¶ 25; McCauley FAC ¶ 23). Plaintiffs allegedly "paid more for the Product[s] based on the representations than [they] would have otherwise paid." (Collishaw FAC ¶ 89; McCauley FAC ¶ 64).

This litigation followed.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

These two First Amended Complaints represent fact patterns which have become altogether familiar in this District. As a result, there is a burgeoning body of decisional law associated with the "Vanilla" segment of consumer goods.[3]

Rather than properly distinguish these prior cases, Plaintiffs urge that "[w]hile this Court *may* agree with . . . other courts, it is not required to" because decisions within a district do not create binding precedent. (emphasis in original). That is, of course, true—however, "the Court does not write on a blank slate," because it "finds ample guidance in these intra-district decisions." *Dashnau*, 2021 WL 1163716, at *3. As discussed herein, the Court has undertaken an

---

[3] This Court, on September 23, 2021, issued a Memorandum Opinion and Order dismissing a similar case. *See Gilleo v. J.M. Smucker Co.*, No. 20-CV-02519, 2021 WL 4341056 (S.D.N.Y. Sept. 23, 2021). The Court noted therein that "[o]ver the past year, at least eight other courts in this District have dismissed nearly identical claims in cases involving vanilla-flavored products," and referred to those cases collectively as the "SDNY Vanilla Cases." *Id.* at *3 (citing *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-CV-10102, 2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021); *Cosgrove v. Oregon Chai, Inc.*, No. 19-CV-10686, 2021 WL 706227 (S.D.N.Y. Feb. 21, 2021); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-09677, 2021 WL 76331 (S.D.N.Y. Jan. 7, 2021); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-08993, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-00493, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020); *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020)).
    Since this Court decided *Gilleo*, at least seven *more* SDNY Vanilla Cases have been dismissed by various judges in this District. *See Turnipseed v. Simply Orange Juice Co*., No. 20-CV-08677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022); *Myers v. Wakefern Food Corp*., No. 20-CV-08470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022); *Beers v. Mars Wrigley Confectionery US, LLC*, No. 21-CV-00002, 2022 WL 493555 (S.D.N.Y. Feb. 17, 2022); *Santiful v. Wegmans Food Mkts., Inc*., No. 20-CV-02933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022); *Civello v. Conopco, Inc*., No. 20-CV-01173, 2021 WL 5761894 (S.D.N.Y. Dec. 3, 2021); *Budhani v. Monster Energy Co*., No. 20-CV-01409, 2021 WL 5761902 (S.D.N.Y. Dec. 3, 2021); *Jones v. Orgain, LLC*, No. 20-CV-08463, 2021 WL 4392783 (S.D.N.Y. Sept. 24, 2021); *cf. Yu v. Dreyer's Grand Ice Cream, Inc.*, No. 20-CV-08512, 2022 WL 799563 (S.D.N.Y. Mar. 16, 2022) (dismissing an analogous case involving chocolate); *Mitchell v. Whole Foods Mkt. Grp., Inc*., No. 20-CV-08496, 2022 WL 657044 (S.D.N.Y. Mar. 4, 2022) (same).
    Plaintiff's attorney in this case appeared as counsel in every SDNY Vanilla Case cited herein and each cited in *Gilleo*. *Gilleo*, 2021 WL 4341056, at *3 n.2. This case is, as Judge Furman explained last year, simply "the latest in a long string of putative class actions brought by the same lawyer alleging that the packaging on a popular food item is false and misleading." *Boswell v. Bimbo Bakeries USA, Inc*., 570 F. Supp. 3d 89, 93 (S.D.N.Y. 2021).

"independent analysis" as to Plaintiffs' claims and concludes that each is meritless. *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 n.4 (2d Cir. 2008) (internal citation removed).

Although Plaintiffs raise five claims for relief, "if the Court concludes as a matter of law that there is no material misrepresentation in this case, none of Plaintiffs' claims can survive the instant [m]otion." *Dashnau*, 2021 WL 1163716, at *3; *see also Blue Diamond Growers*, 2020 WL 7211218, at *3 (dismissing the same claims for relief as those raised here and explaining that because they were "all premised on the same contention" that the defendant's labeling of the product was materially misleading, if the defendant's product "does not mispresent the contents of the container as a matter of law, [then] all of [the] [p]laintiffs' claims must be dismissed").

I.   New York General Business Law Sections 349 and 350

Plaintiffs' first claim for relief proceeds on alleged violations of NYGBL §§ 349 and 350. (Collishaw FAC ¶¶ 115-121; McCauley FAC ¶¶ 90-95). "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce,' whereas [§] 350 prohibits '[f]alse advertising in the conduct of any business, trade or commerce.'" *Gilleo*, 2021 WL 4341056, at *5 (quoting *Wynn*, 2021 WL 168541, at *2 (alterations in original)). "The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349, and therefore the Court will merge its analysis of the two claims." *Oregon Chai*, 2021 WL 706227, at *6 (citation omitted). Plaintiff must, therefore, "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at

160 (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-06409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (alteration and internal quotation marks omitted)). They must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3). Finally, "[a]lthough the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact . . . it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Wynn*, 2021 WL 168541, at *2 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Defendant disputes the second element of the NYGBL analysis, whether the Products' labels are "materially misleading." (Def. Br. at 5-12).[4] Plaintiffs' claims in these two cases, even after this Court's independent analysis, are indistinguishable from those dismissed time over time in various SDNY Vanilla Cases.

A. The Shake

Collishaw argues that the Shake's labeling is materially misleading because it is marketed as "being flavored with, and by vanilla, from extracts of vanilla beans, shown through the statement, 'Vanilla' and picture of two vanilla beans and a large vanilla flower." (Collishaw FAC ¶ 26). Plaintiff alleges that these representations "coupled with a general awareness that a label will disclose artificial vanilla, consumers have no reason to doubt the [Shake] contains a non-negligible amount of extracts from vanilla beans." (*Id.* ¶ 29). Collishaw argues also that, "[s]ince the [Shake] contains high-quality dairy ingredients such as 'Grade A' milk and cream, consumers

_____

[4] Defendant also disputes the third element of the NYGBL analysis, arguing that Plaintiffs have not plausibly alleged that they paid a price premium. (Def. Br. at 15). However, the Court need not and does not consider this argument given its conclusion as to the second element.

will expect a non-negligible amount of extract from the vanilla bean," and the Shake "has a *de minimis* amount of the ingredient picture on the front of the label—extracts from vanilla beans— but has a high level of synthetic flavoring." (*Id*. ¶¶ 33, 75 (italics added)). However, neither the front label nor the ingredient list of the Shake, or the two in conjunction, are misleading. Judge Briccetti, in *Jones v. Orgain, LLC*, dismissed claims relating to a vanilla protein shake sold by Orgain, with a label indicating that it was "vanilla bean" flavored and made with "no artificial sweeteners" 2021 WL 4392783, at *1. Judge Briccetti found the labeling to not be misleading because the "front label simply indicates the beverage is vanilla flavored." *Id*. at *3. The labeling of the protein shake found to not be misleading in *Jones* is reproduced below for reference.

 

*Id.* at *1. The front label of the Shake is indistinguishable from Orgain's and nothing about the marketing thereof makes Defendant's product materially misleading to consumers. As noted by Judge Caproni in yet another SDNY Vanilla Case involving protein shakes, "[w]hen consumers read vanilla on a product label, they understand it to mean the product has a certain taste." *Pichardo*, 2020 WL 6323775, at *5. When consumers purchased the Shake, they expected the taste of vanilla, and that is what they received. No consumer was misled here. That the ingredient list includes "Grade A Milk" in no way leads a consumer to an understanding that the vanilla flavoring

would be derived only from vanilla extract. The ingredient list included "Organic Fair Trade Vanilla *Flavor*" (Collishaw FAC ¶ 26 (emphasis added)), which is exactly what the Shake included, and the front label pitched vanilla flavor, which is exactly how the Shake tasted. There was, as a matter of law, no deception, no misrepresentation, and no violation of NYGBL §§ 349 or 350.

Collishaw's final argument as to the Shake is that "[t]he prominent use of the 'USDA Organic' seal on the Product's front label is false, deceptive and misleading because the Product contains the synthetic flavoring ingredient, vanillin." (Collishaw FAC ¶ 76). This argument, however, is precluded by the Organic Foods Production Act ("OFPA"). *Marentette v. Abbott Lab'ys, Inc*., 886 F.3d 112, 116 (2d Cir. 2018). The OFPA provides that "[t]o be sold or labeled as organic, a product generally must have been produced and handled without the use of synthetic chemicals." *Id*. at 116. The Shake is certified and labeled as USDA organic. (Collishaw FAC at 14-15). Collishaw, to prevail on her argument concerning synthetic flavoring, would have to show that "although [the Shake] product was certified as organic pursuant to the OFPA, the product is not actually organic under the Act." *Marentette*, 886 F.3d at 118. Such an argument "necessarily undermines Congress's purpose in enacting the OFPA," because "Congress did not want to permit individual consumers to challenge certification decisions made pursuant to the OFPA." *Id.* at 118; 120. Thus, Collishaw's alternative argument for liability, premised on use of the USDA seal, fails as a matter of law.

    B.  <u>The Creamer</u>

McCauley's claims against the Creamer fare no better, even after the Court's own independent analysis. McCauley argues that the Creamer's marketing is misleading because: (1) "representations [on the label]—and a general expectation that a food or beverage will truthfully

disclose whether it is 'Artificially Flavored'—assures consumers that the French Vanilla Creamer has a non-negligible amount of extracts from vanilla beans;" (2) consumers are misled "because the front label fails to disclose the [Creamer's] taste is closer to (artificial) coconut than vanilla or at best, equally like coconut;" and (3) the ingredient list "is required to state, 'Artificial Flavor' instead of 'Organic Coconut Flavor." (McCauley FAC ¶¶ 29, 32, 57). Again, none of the above are misleading.

As Judge Seibel explained in *Twohig* (an SDNY Vanilla Case relating to vanilla-flavored soymilk):

> Plaintiffs have failed to plausibly allege that a reasonable consumer would in fact conclude that the word 'vanilla' on the Product's front label implies that the Product's flavoring was derived exclusively or predominantly from vanilla beans, such that the front label would be misleading. A reasonable consumer would understand that 'vanilla' is merely a flavor designator, not an ingredient claim.

519 F. Supp. 3d at 161. Judge Seibel also found in *Twohig* that the soymilk's ingredients list, which included, *inter alia*, "Organic Natural Flavors," did not mislead consumers because vanillin and other extracted ingredients were derived from natural sources. *Id.* at *164. The labeling and the ingredient list of the Creamer are indistinguishable from those in *Twohig*, and cannot plausibly be alleged to have misled consumers. Consumers are not misled as McCauley suggests. Finally, McCauley acknowledges that the ingredient list identifies "Organic Coconut Flavor." (McCauley FAC ¶ 31). Thus, consumers are not misled by any coconut taste, because that flavor was fully disclosed to them. *See e.g. Yu*, 2022 WL 799563, at *6-7. McCauley thus fails to allege a violation of NYGBL §§ 349 or 350 for the Creamer.

Plaintiffs cite to *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) and *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94 (E.D.N.Y. 2020) to support their arguments as to the Products' purported misstatements. (Opp. Br. at 11-12). Neither *Mantikas* nor *Sharpe* are,

however, applicable. In *Mantikas*, "the label of the product at issue made representations about an ingredient—whole grain—not a flavor." *Twohig*, 519 F. Supp. 3d at 162. The label in *Mantikas* "also contained the additional modifier 'made with.'" *Id*. "*Sharpe* is similarly inapposite because the product represented that it was 'MADE WITH AGED VANILLA.'" *Id*. (citing *Sharpe*, 481 F. Supp. 3d at 96-97, 102-03). Neither of the Products' labels contain any qualifiers, such as "made with," nor do they mention anything that could be reasonably understood to indicate the source of their flavor.

Because Plaintiffs have failed to sufficiently plead that either Product's front label or ingredient list is "materially misleading," the NYGBL §§ 349 and 350 claims are dismissed.

II.   Plaintiffs' Remaining Claims for Relief

Plaintiffs' remaining claims—breaches of express warranty, the implied warranty of merchantability, as well as the Magnuson Moss Warranty Act, fraud, negligent misrepresentation, and unjust enrichment—are also based on the assumption that the Products' labels are "materially misleading." (*See* Opp. Br. at 16; 21; 23); *Wynn*, 2021 WL 168541, at *6 ("Plaintiffs also assert claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment. These claims, which largely hinge on the same theory of misleading business practices rejected by the Court above, all fail as a matter of law."). "Because the Court has already determined that [Plaintiffs] ha[ve] failed to allege that the [P]roduct's labeling would be likely to deceive or mislead a reasonable consumer, [plaintiff's other] causes of action are also dismissed for the reasons already stated." *Dashnau*, 2021 WL 1163716, at *8 (quoting *Barreto*, 2021 WL 76331, at *6). Plaintiffs' remaining claims are, therefore, dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiffs'

First Amended Complaints with prejudice.[5]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending

at Doc. 31 in the Collishaw Action, terminate the motion sequence pending at Doc. 25 in the

McCauley Action, and close each case.


**SO ORDERED:**

Dated:    White Plains, New York
          August 11, 2022

_____
PHILIP M. HALPERN
United States District Judge

---

[5] The First Amended Complaints are dismissed with prejudice because Plaintiffs would not be able to cure the defects described herein. Under this Court's Individual Practices, Plaintiffs have each already had an opportunity to amend their pleadings. Accordingly, "a busy district court need not allow itself to be imposed upon by the presentation of [Plaintiffs'] theories" for a third time. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 258 (2d Cir. 2018).